# Butterfield's Appeal.

1. Weyman, by parol, bought land from O'Hara, took possession, made improvements and paid part of the purchase-money. His wife borrowed the remainder of the purchase-money from Butterfield, paid it to O'Hara, who made the deed to her, and she mortgaged to Butterfield, the husband not joining. *Held,* that the husband owning the equitable title, could not compel a conveyance of her legal title without refunding the purchase-money she had paid.

2. Butterfield recovered judgment against the wife on his mortgage; the land was sold by the sheriff on a municipal claim against both husband and wife. *Held,* that this divested the title of both, and in the distribution of the proceeds, Butterfield was entitled on his *judgment* to receive the amount of the wife's interest in the fund, being the purchase-money which she had paid.

3. If the controversy had been between the husband and wife, the fund would be divided between them in accordance with their respective rights and equities; the wife's being the sum paid by her with interest to the sheriff's sale; and the husband's the remainder of the fund.

4. Although the mortgage by the wife were void, the judgment conclusively established its execution; the mortgage was merged in the judgment, which could not be collaterally impeached, except for fraud.

5. Hartman *v.* Ogborn, 4 P. F. Smith. 120. Thompson's Appeal, 7 Id. 175.

October 9th 1873. Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Appeal from the decree of the District Court of *Allegheny county:* No. 161, to October and November Term 1873. In the distribution of the proceeds of the sheriff's sale of the real estate of Philip Weyman and Catharine Weyman, his wife.

The real estate of the defendants was sold by the sheriff under a municipal claim at the suit of the borough of Sharpsburg for $2100. The sheriff returned his distribution of the proceeds of sale. Exceptions to part of the distribution of the proceeds of sale were filed by Catharine Weyman, and the sheriff by order of the court paid the proceeds of sale into court. W. F. Austin, Esq., was appointed auditor to pass upon the exceptions; afterwards certain undisputed claims were paid out by agreement, leaving to be passed on by the auditor the sum of $1288.34, the sum awarded by the sheriff to the executors of Jonas Butterfield, deceased, and $104.32 awarded to Weyman and wife, the defendants in the execution. Philip Weyman was afterwards allowed to join in and prosecute the exceptions filed by his wife.

The auditor reported the following as the facts in the case: About the year 1847, Philip Weyman, one of the defendants, by his wife Catharine, agreed to buy from James O'Hara the lot of ground sold by the sheriff in this case. The bargain was verbal, no papers drawn nor money paid at the time. The price agreed upon for the lot was $400. Before any money was paid, and some time after the bargain was made, Weyman dug a cellar and began to build upon the lot; did a part of the work himself, and employed Lewis Dengler to do the carpenter work on the house, for which Dengler obtained judgment against Weyman. Weyman and his family occupied the house, with the exception of three years, when he rented it, until his separation from his wife, four or five years ago. * * * It does not appear, however, that Mrs. Weyman had anything to do with the building of the house. Weyman's wife paid, after the house was built, ten dollars in money to Mr. O'Hara on account of the lot, and Weyman worked for Mr. O'Hara, to the amount of thirty or forty dollars, all which were credited as payments by Mr. O'Hara. Weyman collected the rent of the house during a tenant's occupancy, and was always treated as its owner. * * *

On April 15th 1867, after the separation of Weyman and his wife, O'Hara made a deed of the property to Catharine Weyman, who was accompanied by Jonas Butterfield, Sr., since deceased, and who paid the money for the property, but took no part in the transaction further than to pay the money, for which he took a receipt in the name of Catharine Weyman. It is not disputed that the money thus paid was the largest part of the sum for which Mrs. Weyman afterwards gave a mortgage to Jonas Butterfield, and which is hereafter mentioned. When O'Hara delivered the deed to Mrs. Weyman, Philip Weyman was not present, nor is there any evidence to show that he had released his claim to the property.

On January 23d 1869, Catharine Weyman was declared a feme sole trader by the Court of Common Pleas. On May 7th 1870

she executed a mortgage, as feme sole trader, to Jonas Butterfield, Sr., deceased, for $1117.50, which included the money paid by Butterfield to O'Hara, interest, bonus, and some other indebtedness incurred by her to Butterfield. Philip Weyman having previously refused to join in a mortgage for the same debts ·to Butterfield. * * *

To December Term 1871, Butterfield issued 'a scire facias against Catharine Weyman on the mortgage thus executed by her, and on the 12th of December 1871 recovered a judgment on it for $1290.71.

The auditor further reported, sustaining the exception to the appropriation by the sheriff of the $1288.34 to the payment of the judgment on Butterfield's mortgage, on the grounds that the real estate was the husband's, and the wife had no power to give a mortgage binding it, and awarded this sum, less costs of audit, together with $104.32 appropriated by the sheriff to the defendants, to Philip Weyman as owner of the real estate sold, to the exclusion of his wife and Butterfield claiming under her.

The executors of Butterfield filed exceptions to the auditor's report; they were overruled by the court, the report confirmed, and distribution decreed in accordance with it.

The executors appealed to the Supreme Court, and in several specifications assigned the decree for error.

*J. R. Butterfield* and *C. C. Taylor,* for appellants.

*J. Barton,* for appellees.

Mr. Justice WILLIAMS delivered the opinion of the court, March 2d 1874.

The legal title to the land sold by the sheriff was in the wife, and though the equitable estate was in the husband he could not compel a conveyance of the wife's legal title without refunding to her the purchase-money which she paid O'Hara in order to procure it. The sale on the judgment against the husband and wife divested the titles of both. How then shall the proceeds of sale be distributed? Shall the residue, after satisfying the judgment on which the property was sold and the other liens and charges for which the husband was liable, be given to the husband as decreed by the District Court; or shall it be distributed between the husband and the representatives of the wife's mortgagee as claimed by the appellants? If the controversy was between the husband and wife, manifestly the fund should be divided between them in accordance with their respective rights and equities. The evidence shows that in 1847 the husband purchased the land of O'Hara for the sum of $400; that he built a two-story brick dwelling-house and frame kitchen thereon, and paid forty or fifty dollars of the pur-

chase-money. In 1867 the wife paid the residue, amounting to $669.50, and obtained from O'Hara a deed for the land. The sum paid by the wife, with interest, to the sheriff's sale, is then the measure of her interest in the land and of her share of the proceeds of sale. If so, it is clear that the husband would not be entitled as against the wife to the whole of the fund left for distribution, but only to the residue after reimbursing the wife the amount of the purchase-money paid O'Hara. But the controversy here is not between the husband and wife, but between the husband and the legal representatives of the wife's mortgagee. Are the latter then entitled to the wife's share of the fund? If not, they have no standing in court, and it is immaterial what are the equities between the husband and wife. If it be conceded that the wife had no power to execute the mortgage as a feme sole trader, and that the mortgage was void because the husband did not join with her in its execution, it does not follow that the judgment obtained against the wife on the mortgage was a nullity. On the contrary, the execution of the mortgage is conclusively established by the judgment in the scire facias upon it: Edmonson *v.* Nichols, 10 Harris 74. The mortgage is merged in the judgment, and, even if null and void, cannot be collaterally impeached : Hartman *v.* Ogborn, 4 P. F. Smith 120. In this respect the judgment on a mortgage under the Act of 1705, which is a proceeding *in rem*, differs from a judgment *in personam* on the bond of a married woman which is absolutely void. Doubtless the judgment on the mortgage was voidable, and might have been set aside or reversed at the instance of the wife; but until directly avoided by her, its validity cannot be inquired into or impugned collaterally except for fraud : Lowber's Appeal, 8 W. & S. 387 ; Billings *v.* Russell, 11 Harris 189 ; Yaple *v.* Titus, 5 Wright 195. The judgment on the mortgage then cannot be disregarded, but must be treated as conclusive in this proceeding : Thompson's Appeal, 7 P. F. Smith 175 ; if so, it bound the wife's interest in the land and is entitled to so much of the fund as was produced by the sale thereof. The decree of the District Court must therefore be reversed, and the wife's share of the proceeds of sale appropriated to the judgment on the mortgage and the residue to the husband. Distributing the fund in this way will do exact justice between the parties. It will give to the appellants the money which the mortgagee lent the wife to enable her to pay the purchase-money and procure a deed for the land ; and it will give to the husband the proceeds realized from the sale of his equitable estate, and he can claim no more either in law or equity.

And now, March 2d 1874, it is ordered, adjudged and decreed, that the decree of the District Court distributing the residue of the proceeds of the sheriff's sale, viz. : the sum of $1234.66, to Philip Weyman, be reversed and

set aside; and it is further ordered, adjudged and decreed, that part of said sum, viz.: $669.50, with interest thereon from April 19th 1867 to December 1st 1871, amounting to $855.95, be distributed and paid to the appellants, executors of Jonas Butterfield, deceased, on judgment sur mortgage v. Catharine Weyman, No. 1008, December Term 1871; and that the residue of said sum, viz.: $378.71, be distributed and paid to Philip Weyman, the appellee, after deducting therefrom the costs of this appeal.