## Gingrich v. Chaplin et al.

*Graham, Yost, Meyers and Graham,* for plaintiff.
*Englehart & Larimer,* for defendants.

GRIFFITH, J., April 26, 1948.—This is an action to quiet the title of the "coal, iron ore, limestone, fireclay and other minerals in or upon three certain tracts of land situate in White Township, Cambria County, Pennsylvania."

During the years 1930 and 1931, and prior thereto, the heirs of Elias Deemer and John M. Hunt were the

owners of the land in question, which was assessed in fee in the name of E. Deemer & Company. The taxes for the years 1930 and 1931 were unpaid, and con-· sequently there was a treasurer's sale in 1932, at which the land was purchased by the County Commissioners of Cambria County. However, on December 31, 1931, the heirs of Deemer and Hunt had sold the coal, iron ore, limestone, fireclay and other minerals in and upon the said land to plaintiff, Ralph C. Gingrich, by general warranty deed, recorded in Deed Book Vol. 452, page 53. On account of the severance of the minerals, the surface only continued to be assessed to E. Deemer & Company, beginning with the year 1932.

By petition entered to March term, 1934, no. 7, C. P. D., filed on May 28, 1934, before the two-year period of redemption had expired, the county commissioners presented a petition to the court, setting forth they had agreed to accept from the former owners a lesser sum in compromise of the unpaid taxes on the land. As a result of this petition, on June 4, 1934, a decree was entered approving the compromise and directing the commissioners to make a deed to the former owners. On the same day a deed was made to the Deemer and Hunt heirs for the land in fee. This deed is recorded in Deed Book Vol. 453, page 656. On July 18, 1934, by resolution, the county commissioners exonerated all unpaid taxes for the years 1930 and 1931.

In the testimony taken at the time the approval of the court was asked for the commissioners' compromise, the chief clerk of the county commissioners testified "the purchaser has offered to redeem the surface at the assessed valuation set by the assessor, plus the interest at six percent and costs to date."

Believing that the county commissioners' deed of June 4, 1934, did not convey title in fee, defendants, Chaplin and Oshall, offered to purchase from the county commissioners the minerals underlying the land

in question; and the commissioners accordingly, by petition filed to March term, 1947, no. 51, C. P. D., requested the court to approve a sale to defendants. Plaintiff attempted to prevent this sale, but was unsuccessful, and on March 15, 1947, the approval of the court of the sale by the commissioners to defendants was entered, and on July 15, 1947, a deed was given by the county commissioners to defendants for the coal and other minerals.

From the pleadings and the testimony, we make the following

### Findings of Fact

1. Prior to 1930 the real estate described in the complaint was owned by the heirs of Elias Deemer and John M. Hunt.

2. In 1930 and 1931 this real estate was assessed in the Cambria County assessments in White Township in the name of E. Deemer & Co., fee.

3. Taxes on these assessments for 1930 and 1931 were unpaid and were returned by the collector.

4. By a general warranty deed dated December 31, 1931, and recorded in the recorder's office of Cambria County, Pa., in Deed Book Vol. 452, page 53, the heirs of Elias Deemer and John M. Hunt conveyed to Ralph Gingrich, plaintiff, all the coal, iron ore, limestone, fireclay and other minerals, lying in or upon the real estate heretofore referred to in White Township, as well as in certain other real estate in Chest Township, Cambria County, Pa.

5. On June 13, 1932, the Treasurer of Cambria County sold to Cambria County the land described in the complaint for unpaid taxes for 1930 and 1931 on the fee.

6. On May 28, 1934, at March term, 1934, no. 79, C. P. D., the commissioners presented a petition to this court under the Act of May 25, 1933, P. L. 1018, for leave to compromise certain taxes on this real estate.

The petition sets out that the real estate heretofore referred to had been sold to the county on June 13, 1932; that the right of redemption would expire June 13, 1934, and that the former owners had offered $979.68 in compromise of the amount of the taxes, penalties, interest and costs due. The total amount due for which the offer of compromise was made was set out as $3,199.74. Tax statements attached to the petition show that this amount represented the full amount of taxes on the fee for 1930 and 1931, and the amount of taxes on the surface for 1932 and 1933. The petition sets out further that the commissioners had agreed to accept in compromise of the amount of taxes, penalties, interest and costs due as aforesaid the sum of $979.68. The commissioners asked the court for a decree of confirmation of that agreement and for an order directing them to convey the property to the former owners.

7. On this petition the court on June 4, 1934, made a decree that it was satisfied that the compromise settlement was proper and to the advantage of the county and the taxing authorities, and ordered that the compromise settlement made by the county commissioners with the former owners, as set forth in the petition, be approved. The commissioners were directed to execute a deed to the former owners for the real estate.

8. At the hearing before the court, H. F. Dorr, chief clerk of the county commissioners, testified that "the purchaser has offered to redeem the surface at the assessed valuation set by the assessor plus the interest at six percent and costs to date".

9. Pursuant to the decree of the court the Commissioners of Cambria County made a deed to the heirs of Elias Deemer and John M. Hunt, the former owners, conveying to them in fee simple the land formerly

owned by them. This deed is dated June 4, 1934, and is recorded in Deed Book Vol. 453, page 656.

10. On July 18, 1934, the Commissioners of Cambria County, after applying the proceeds of the compromise sale, exonerated all unpaid taxes on the fee for 1930 and 1931 and all unpaid taxes on the surface for 1932 and 1933. After the compromise the real estate was put back into assessment, the surface being assessed to Wm. Russell Deemer et al., and the minerals to Ralph C. Gingrich.

11. Defendants claim title to the minerals under this land by virtue of proceedings in 1947, under which they purchased whatever interest Cambria County had in the minerals.

12. Neither plaintiff nor defendants are in possession of the minerals involved in this suit.

## Discussion

Defendants believe that the proceeding to compromise taxes in 1934 and the decree thereon, followed by the commissioners' deed to plaintiff, were not effective to wipe out the taxes on the minerals for the years 1930 and 1931, and that consequently the commissioners had title to the minerals at the time they asked leave of court to sell the same to defendants in 1947. While the petition of the county commissioners in 1934 made no exception of the minerals, and neither did the decree of the court nor the commissioners' deed which followed, yet defendants believe that since the decree was based upon the testimony of a witness who said that the purchaser had offered to redeem the surface that the title passed by the deed to plaintiff was title to the surface only. With this contention we cannot agree. Defendants point out that the amount offered by the Deemer and Hunt heirs in compromise was the amount of the taxes on the surface for the years 1932 and 1933, when the surface was assessed separately,

plus a corresponding amount for taxes on the surface for 1930 and 1931 if the surface had then been assessed separately at the same rate, plus interest and penalties. Plaintiff thinks that if this was a payment of taxes on the surface only, it was a payment in full, and, therefore, not a compromise, and there would have been no need for a petition to compromise, because the former owners had the absolute right of redemption, and as a matter of fact in this case the two-year period of redemption had not yet expired; so that there would have been no need for a commissioners' deed. However this may be, there are several circumstances which indicate that the offer of compromise with the former owners made in 1934 was a compromise of taxes on the fee for the years 1930 and 1931 and on the surface for the years 1932 and 1933 only. An examination of the petition for leave to compromise, filed to March term, 1934, no. 79, C. P. D., shows that the tax statements attached thereto, listing the taxes to be compromised in the total sum of $3,199.74, indicate on each tract the full amount of the taxes on the fee for the years 1930 and 1931 and the taxes for surface for the years 1932 and 1933 only. The compromise with the former owners was entered into almost 14 years ago, and in the meantime the attorney for the former owners is dead, as are two of the county commissioners who signed the petition, and the third is no longer in office. It also appears that the deed to the former owners contained no reservation of the minerals. Since the former owners had given a general warranty deed to plaintiff on December 31, 1931, after the taxes for the years 1930 and 1931 had been assessed, they would be liable to plaintiff for the payment of such taxes. Moreover, it is doubtful whether the commissioners had the right to split an assessment and permit a redemption of surface only when the taxes were levied upon the land in fee. It also appears that on July 18,

1934, subsequent to the decree of the court, the county commissioners by resolution exonerated all remaining taxes against these properties, and in the resolution specifically listed the taxes on each piece for the years 1930 and 1931 in fee.

There is no allegation of fraud here, and in the present proceeding we could rectify a mistake had a mistake been made. "In the absence of statutory authority, a court ordinarily has no power to correct, amend, open, or vacate a judgment after the expiration of the term": 49 C. J. S. 438.

There is no doubt but that a judgment or decree rendered by a court of competent jurisdiction may not be subject to collateral attack. In Moeller v. Washington County, 352 Pa. 640, the court said:

"It is an established principle of law, hardly requiring citation of authority, that a judgment, order or decree rendered by a court having jurisdiction of the parties and the subject matter, unless reversed or annulled in some proper proceeding, is not open to collateral attack in any other proceeding."

Likewise, in Gordon v. Hartford Sterling Co., 350 Pa. 277, the court said:

" 'It is the settled law of this State that in the absense of fraud or collusion a judgment or decree of a court of competent jurisdiction, valid and regular on its face, in force and unreversed, cannot be impeached by the parties or privies thereto or by a stranger in a collateral proceeding in the same or another court. It is conclusive not only as to the judgment or decree itself but as to every fact directly or necessarily adjudicated or which was necessarily involved in or was material to the adjudication.' "

It is the judgment or decree of the court that concludes the parties, not the testimony or the findings of the court. "The force of the estoppel lies in the judg-

ment itself; it is not the finding of the court or the verdict of the jury which concludes the parties, but the judgment entered thereon": 50 C. J. S. 142.

"A judgment of a court having jurisdiction cannot be impeached collaterally by showing that the evidence on which it was based was illegal, inadmissible or insufficient to sustain the judgment. Indeed, the courts have gone so far as to state that a judgment entered in the absence of any evidence is not subject to collateral attack": 49 C. J. S. 856.

"An inconsistency between the findings and the judgment rendered by a court of competent jurisdiction will not subject such judgment to collateral attack": 15 R. C. L. 863.

"Errors of judgment or irregularities, however gross, which do not render the judgment absolutely void, are not available on collateral attack, and, moreover, this rule as to the nonavailability on collateral attack has been held to be applicable even where such errors or irregularities appear on the face of the record": 49 C. J. S. 851, 852. A void decree can be taken advantage of at any time in any court but a voidable decree must be attacked directly in the proceeding in which it is entered and is not subject to collateral attack: Murray Estate, 158 Pa. Superior Ct. 504, 511.

Defendants contend, however, that their attack on the decree of the court approving the compromise of taxes with the former owners in 1934 is not a collateral one. A direct attack has been defined as follows: "A direct attack on a judgment is an attempt to avoid, correct, vacate, annul, review, cancel, or set aside the judgment in a proceeding or manner provided by law for such purpose": 49 C. J. S. 805. And a collateral attack has been defined as follows: "A collateral attack is an attempt to avoid, defeat, or evade a judg-

ment, or to deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it": 49 C. J. S. 809.

Defendants consider this proceeding one for the purpose of construing the decree of 1934, and say that they are not making a collateral attack upon it. In this event their proper proceeding would have been to petition the court to clarify its order: Crawford's Estate, 313 Pa. 127.

We are of the opinion that defendants' attempt in a suit to quiet title to attack the judgment or decree upon which plaintiff bases his title must be considered as a collateral attack upon the decree.

"Similarly, an attempt in a suit to quiet title, to attack a judgment affecting the property has been regarded as a collateral attack upon the judgment, even though the petition contained a prayer that the judgment be vacated": 31 Am. Jur. 207.

In Cierlinsky v. Rys, 225 Pa. 312, which was an action of ejectment, a decree of the orphans' court awarding a widow the real estate as part of her exemption was attacked on the ground that the petition for widow's exemption showed on its face that the widow had remarried before the petition was filed. This was held to be a collateral attack. In Butterfield's Appeal, 77 Pa. 197, a married woman made a mortgage without the joinder of her husband and judgment was obtained on a sci. fa. sur mortgage. The court said:

"If it be conceded that the wife had no power to execute the mortgage as a feme sole trader, and that the mortgage was void because the husband did not join with her in its execution, it does not follow that the judgment obtained against the wife on the mortgage was a nullity. On the contrary the execution of the mortgage is conclusively established by the judgment in the scire facias upon it. . . . The mortgage is

merged in the judgment, and, even if null and void, cannot be collaterally impeached."

In Colley v. Latimer, 5 S. & R. 211, the validity of a judgment based on two returns of nihil on a scire facias sur mortgage was held to be unimpeachable in a subsequent action in ejectment though it was proven that the mortgagor was living on the land at the time the two scire faciases were taken out and returned. Also in Yaple et al. v. Titus et al., 41 Pa. 195, which was an action in ejectment, defendant's title was based on an order of court authorizing the sale of a lunatic's property for the payment of his debts. At the trial plaintiff offered to prove that the lunatic had died before the order of sale was granted. The court held this evidence was properly excluded and said, page 202:

"But it is said that the Court of Common Pleas had no jurisdiction over the estate of Timothy Fuller after his death, and that consequently the order to sell and the sale made under it were void. It is not enough for the plaintiffs to show that they were erroneous, for errors of law, or even of fact, can be corrected only by writ of error or by appeal. It may be that the order of sale must have been set aside, had an appeal been taken from the court which made it. But the question now is, in this collateral action, whether the order was wholly void for defect of jurisdiction to make it."

"This is the case (i.e., the attack is collateral) where the proceeding is founded directly on the judgment in question, . . . or where the judgment forms a part of plaintiff's title or of the evidence by which his claim is supported": 49 C. J. S. 811, 812.

"In this action any attack on a judgment which forms the basis of the title of one of the parties, or enters into his title, will be considered a collateral impeachment of such judgment": 49 C. J. S. 812, note 32.

It is true that a judgment may be attacked collaterally on the ground of fraud; Shepherd v. Shep-

herd, 353 Mo. 1057, 186 S. W. (2d) 472. Or where a statute permits such attack under certain circumstances: Grayling Lumber Co. et al. v. Tillar et al., 162 Ark. 221, 258 S. W. 132.

However, it would seem that the attack made by defendants upon plaintiff's decree in this case would be considered a collateral attack not only in Pennsylvania but generally. For example, in Linville v. Ripley et al., 347 Mo. 95, 146 S. W. (2d) 581, a grantee from the purchaser of real estate at a sale in the probate court brought an action to quiet title against defendants who claimed under the intestate. The court said that defendant's claim that the judgment of the probate court was void was a collateral attack. And in Lander & Co. v. Brown et ux., 110 Mont. 128, 99 P. (2d) 216, the court said:

"By 'collateral attack' is meant every proceeding in which the integrity of a judgment is challenged, except those made in the action wherein the judgment is rendered or on appeal thereof, and except suits brought to obtain decrees declaring judgments to be void ab initio. . . . Thus, a quiet title suit is a collateral attack on former judgments or records."

Likewise, in Penton v. Brown-Crummer Inv. Co., 222 Ala. 155, 131 So. 14, defendant in an action to enforce a municipal lien filed a cross-bill to cancel a resolution of council on the ground that a quorum was not present. A demurrer to the cross-bill was sustained on the ground that municipal records were not subject to collateral attack. The court said the proper proceeding would have been to mandamus the council to amend its records. In Van Fleet on Collateral Attack, sec. 3, an action to quiet title is enumerated as one of a number of instances of collateral attack.

Defendants cite the case of Davis v. Commonwealth Trust Co. et al., 335 Pa. 387. In this case, however, the attack was not collateral but direct. When the court

corrected its decree "it had complete control of the proceedings by reason of the pendency of the motion for a new trial and for judgment non obstante". The proceeding was a petition by defendant for a rule to show cause why the lien of the judgment should not be released from all real estate and was, therefore, not collateral.

Since defendants were purchasers with full notice of the infirmity in the commissioners' title, their rights can rise no higher than the commissioners', for there was no laches on the part of plaintiff. If the decree of June 4, 1934, was founded on a mistake of fact, by prompt action the commissioners could have petitioned the court to vacate that decree. Whether they could have done so after their resolution of July 18, 1934, exonerating the taxes for the years 1930 and 1931 not only on the surface but on the fee, we need not discuss here. It is sufficient to say that the decree may not be collaterally attacked in such a proceeding as the present.

We, therefore, enter the following

## Conclusions of Law

1. An action to quiet title is the proper procedure in this case, since neither plaintiff nor defendants are in possession of the minerals involved.

2. Plaintiff has title to the minerals involved in this case. Defendants have no title.

3. The costs should be paid by defendants.

## Decree

And now, April 26, 1948, after argument and upon due consideration, it is ordered, adjudged and decreed that plaintiff has title to all the coal, iron ore, limestone, fireclay and other minerals lying in or upon all those pieces or parcels of land situate in White Township, Cambria County, Pa., described in the complaint,

and judgment is entered in favor of plaintiff and against defendants for coal, iron ore, limestone, fireclay and other minerals. The costs are to be paid by defendants.